# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KELLY PATRICK RIGGS,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | 2:15-cv-08043-KOB |
| ] | |
| **UNITED STATES OF AMERICA** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

The movant Kelly Patrick Riggs pled guilty to one count of attempted enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and one count of transfer of obscene material to a minor, in violation of 18 U.S.C. § 1470. (Cr. Doc. 89).[1] The court sentenced him to 120 months imprisonment on each count, to run concurrently. (*Id.*). Mr. Riggs moved, under 28 U.S.C. § 2255, to vacate his sentence. (Doc. 1). After the government responded (doc. 13), Mr. Riggs moved to amend his § 2255 motion. (Doc. 59). The court granted the motion to amend, and Mr. Riggs filed an amended § 2255 motion and a motion for appointment of counsel. (Docs. 63, 67). The Government responded to the amended § 2255 motion and Mr. Riggs replied. (Docs. 72, 75).

In his amended § 2255 motion, Mr. Riggs contends that (1) his guilty plea was not intelligent, knowing, and voluntary; (2) counsel was ineffective because he had a conflict of interest; and (3) he is actually innocent. (Doc. 63). The court WILL DENY Mr. Riggs' § 2255 motion because the record confirms that Mr. Riggs' challenge to his guilty plea is procedurally barred and procedurally defaulted; Mr. Riggs waived the alleged conflict of interest; and

---

[1] The court cites documents from Mr. Riggs' underlying criminal case, *United States v. Riggs*, 2:12-cr-00297-KOB-JEO, as "Cr. Doc. __."

Mr. Riggs' freestanding claim of actual innocence is not cognizable in a § 2255 motion. The court WILL DENY AS MOOT Mr. Riggs' request for appointment of counsel.

I. BACKGROUND

In 2012, a grand jury charged Mr. Riggs with one count of enticing a minor to engage in criminal activity in violation of 18 U.S.C. § 2422(b) and one count of transfer of obscene material to a minor in violation of 18 U.S.C. § 1470. (Cr. Doc. 6). The court appointed Jeffrey Bramer as his defense attorney. (Cr. Doc. 3). Mr. Bramer, however, quickly withdrew as counsel based on an undisclosed "ethical issue." (Cr. Doc. 18 at 2; Cr. Doc. Minute Entry, Oct. 9, 2012).

Next, the court appointed David Luker as Mr. Riggs' defense attorney. (Cr. Doc. 20). While represented by Mr. Luker, Mr. Riggs filed a *pro se* motion seeking to represent himself. (Cr. Doc. 28). A magistrate judge held a hearing, at which he allowed Mr. Luker to withdraw and appointed the Federal Public Defender to represent Mr. Riggs. (Cr. Doc. 100 at 16–17).

Allison Case and Glennon Threatt entered appearances as Mr. Riggs' public defenders. (Cr. Docs. 35, 36). While they were representing him, Mr. Riggs filed a *pro se* motion seeking subpoenas for various witnesses, including seven alleged alibi witnesses and three character witnesses. (Cr. Docs. 45, 105). After holding a hearing on the motion, the magistrate judge issued all of the requested subpoenas. (Cr. Docs. 46, 105).

Mr. Riggs next filed a *pro se* motion requesting that the court hold a hearing on whether Mr. Threatt had a conflict of interest. (Cr. Doc. 51). Mr. Riggs alleged that members of a prison gang had threatened to harm or kill Mr. Threatt and his family, and stated that he had also told Mr. Threatt about "a confession to killing a co-conspirator and the intent to kill witnesses of that event." (*Id.* at 2). Although that *pro se* motion itself did not state who the alleged co-conspirator

2

was, who made the alleged confession, or what its relation to Mr. Riggs' criminal case was, Mr. Riggs' current § 2255 motion makes it apparent that Mr. Riggs was referring to another of Mr. Threatt's clients, a man named Alvin Johnson, who Mr. Riggs says confessed to killing another man named DeAndre Washington. (*See* Doc. 63 at 6–8).

On September 5, 2013, the magistrate judge held a hearing on Mr. Riggs' allegation about Mr. Threatt's alleged conflict of interest. (Cr. Doc. 109). The magistrate judge indicated that Mr. Threatt "was aware of [the threat against Mr. Threatt] and [he] has already discussed it with the Federal Defender, Mr. Butler, and they reached the conclusion that no further action would be taken on their part at the present time . . . . And they also did make their own independent inquiry as to whether or not there's a conflict issue. And . . . Mr. Threatt . . . and Mr. Butler did not believe there was a conflict." (*Id.* at 7). Mr. Riggs then told the magistrate judge that he had discussed the issue with Mr. Threatt several days earlier and they had "determined that it was not going to be an issue," but by then, he had already mailed the motion. (*Id.*). After the hearing, the magistrate judge entered an order stating that he was "convinced there is no conflict in the representation of the defendant by present counsel." (Cr. Doc. Minute Entry, Sept. 5, 2013).

At the same hearing, Mr. Riggs stated that when he mailed the motion requesting a hearing on Mr. Threatt's alleged conflict, he also mailed two other pleadings, one of which was a notice of alibi. (Doc. 109 at 3–5). The magistrate judge noted that the court had not yet received those filings. (*Id.* at 3–4). Mr. Riggs stated that, since mailing the notice of alibi, he had spoken with Mr. Threatt and they had "come to a point." (*Id.* at 5). Neither Mr. Riggs nor Mr. Threatt disclosed the content of their discussion, but Mr. Riggs indicated that he was "satisfied with the

results of [that] conversation," and Mr. Threatt indicated that he was not planning to file a notice of alibi. (*Id.* at 5–6).

Mr. Riggs requested to withdraw the two pleadings that he had mailed. (*Id.* at 13–14). The magistrate judge stated that he would review them before allowing Mr. Riggs to withdraw them. (*Id.*). The record does not include an order permitting withdrawal, nor does it contain the two pleadings.

The day after the conflict hearing, Mr. Riggs entered a plea agreement with the Government, in which he agreed to plead guilty to both counts against him. (Cr. Doc. 55). The plea agreement described the factual basis of the crime. (*Id.* at 3–5). It stated that, on May 23, 2012, Mr. Riggs responded to an internet advertisement and emailed an undercover law enforcement officer whom he believed to be a 14 year old girl. (*Id.* at 2–3). Over the next few days, he emailed and texted with the undercover officer, sending her nude pictures of an adult man's body and asking for nude pictures in return. (*Id.* at 3–4). He eventually arranged to meet the purported 14 year old girl at a bowling alley around 10:00 am on May 26, 2012, but when he arrived there at 10:20 am, law enforcement officers arrested him. (*Id.* at 4–5).

At Mr. Riggs' change of plea hearing, Mr. Riggs stipulated that the factual basis set forth in the plea agreement was accurate. (Cr. Doc. 62 at 25–26). The court asked Mr. Riggs: "Has anyone promised you anything or threatened you in any way to encourage you to enter this plea of guilty?" (*Id.* at 16). Mr. Riggs responded, "No." (*Id.*). The court also asked Mr. Riggs if he was "satisfied with Mr. Threatt and the work that he has done," to which Mr. Riggs responded, "Yes." (*Id.* at 24).

The next month, Mr. Riggs filed a *pro se* motion to withdraw his guilty plea and to replace his attorney. (Cr. Doc. 57). In the motion, he stated that he had entered the plea

agreement under duress because (1) a gang had threatened his family, and (2) Mr. Threatt had told him the only way to get a reduction in his sentence was to plead guilty. (*Id.* at 1–2). He explained that, on the day of the prior conflict hearing, he had given a statement against Mr. Threatt's other client, Alvin Johnson, because Mr. Johnson had made a jailhouse confession to the murder of DeAndre Washington and had threatened Mr. Threatt and Mr. Threatt's family. (*Id.* at 2, 6, 8). According to Mr. Riggs, after he notified Mr. Threatt of those matters, Mr. Threatt told Mr. Johnson that Mr. Riggs "was a problem to [Mr. Johnson's] case." (*Id.* at 6). Mr. Riggs also alleged that Mr. Threatt had told a United States marshal that "this was a conflict." (*Id.*).

The magistrate judge held a hearing on the portion of the motion seeking to discharge counsel. (Cr. Doc. 111). Expressing concern about potentially breaching attorney-client privilege and revealing defense strategy, the magistrate judge told Mr. Riggs not to reveal any confidential communications between his attorney and himself. (*Id.* at 7–8). But when the magistrate judge asked Mr. Threatt if he opposed Mr. Riggs' motion for a new attorney, Mr. Threatt said he did not. (*Id.* at 6).

After that hearing, the magistrate judge entered an order stating that "the interests of justice warrant the release of the Federal Defender and the appointment of new counsel. The court notes that the decision in no way reflects on the performance of counsel, but is indicative of the defendant's narcissistic personality." (Cr. Doc. 59 at 4). The magistrate judge appointed Brett Bloomston as Mr. Riggs' fifth appointed attorney. (Cr. Doc. 60).

The court then held a hearing on the motion to withdraw Mr. Riggs' guilty plea. (Cr. Doc. 114). Mr. Riggs told the court that after the first conflict hearing on September 5, 2013, at which the court had ruled that Mr. Threatt had no conflict, Mr. Riggs met with a United

5

States deputy marshal about Mr. Johnson's statements. (*Id.* at 4–5). At that time, Mr. Threatt told the marshal that because Mr. Johnson was another of his clients, he could not represent Mr. Riggs during the marshal's interview of Mr. Riggs. (*Id.* at 5). The court asked if Mr. Riggs understood that "the conflict that Mr. Threatt was referring to had to do with your conversation with the marshal about Mr. Johnson . . . [h]ad nothing to do about his continued representation with you at trial or at your plea." (*Id.* at 6). Mr. Riggs stated that he understood the difference. (*Id.*).

The court pointed out that Mr. Riggs' change of plea hearing took place after the meeting with the United States marshal about Mr. Johnson, but Mr. Riggs had not mentioned the conflict at that time, despite testifying under oath that he was satisfied with Mr. Threatt's representation. (Cr. Doc. 114 at 6–8). And the court asked Mr. Riggs about his testimony that he had not been threatened into entering the plea agreement. (*Id.* at 11). Mr. Riggs stated that he had lied to protect his family. (*Id.*).

The Government called Mr. Threatt to testify at the hearing on Mr. Riggs' motion to withdraw. (Cr. Doc. 114 at 37). Mr. Threatt testified that, at Mr. Riggs' meeting with the United States deputy marshal on September 5, he had told Mr. Riggs that the interview should take place "outside [his] presence because [he] believed that [Mr. Riggs] was going to give information about a client of [his] at the time." (*Id.* at 39–40). He testified that Mr. Riggs never told him he was entering the plea agreement because of fear for himself and his family. (*Id.* at 43). And he testified that he and Mr. Riggs had, on at least three occasions, watched a videotaped confession in which Mr. Riggs admitted to sending the emails and text messages, including the obscene photographs. (*Id.* at 45). Mr. Threatt testified that Mr. Riggs had never refuted that confession. (*Id.*).

6

After the Government and defense counsel questioned Mr. Threatt, the court permitted Mr. Riggs to question Mr. Threatt directly. (Cr. Doc. 114 at 55–84). In response to Mr. Riggs' questions, Mr. Threatt testified that he "spoke to at least eight of [ten people who Mr. Riggs wanted to subpoena] on the phone about the matters that [Mr. Riggs] had asked [him] about." (*Id.* at 55). He also testified that he and Mr. Riggs had several conversations about an alibi defense, and Mr. Riggs had filed a *pro se* notice of alibi defense. (*Id.* at 74). Mr. Threatt testified that he told Mr. Riggs he would not file the notice because "alibi means that an individual is asserting that they were at a place other than the place that a crime was committed. When an individual—when the criminal allegation is that you were sending text messages from a phone, it does not matter whether you were doing that in this building or across the street. That's the conversation we had." (*Id.* at 74–75). In addition, Mr. Threatt testified that he felt an alibi defense would be inconsistent with Mr. Riggs' confession. (*Id.* at 75).

The court found that Mr. Riggs' plea was knowing and voluntary, and that sufficient evidence existed to justify a finding of guilt. (Cr. Doc. 114 at 88). The court also found that Mr. Threatt and his predecessor attorneys had provided Mr. Riggs with effective assistance. (*Id.* at 88–90). As a result, the court denied the motion to withdraw the guilty plea. (*Id.* at 90).

The court sentenced Riggs to two concurrent 120-month sentences. (Cr. Doc. 89). Mr. Riggs appealed. On appeal, Mr. Bloomston filed a brief under *Anders v. California*, 386 U.S. 738 (1967), stating that he believed no issues of arguable merit existed. (Doc. 13-2 at 55–72). In response, Mr. Riggs filed a *pro se* brief, contending, among other things, that all of his attorneys had provided ineffective assistance, that his guilty plea was invalid because Mr. Threatt and other federal public defenders coerced him to enter that plea, and that he was actually innocent. (Doc. 13-2 at 75–93). Specifically, Mr. Riggs argued that Mr. Threatt "knowingly and

willingly hamper[ed] the prosecution of the murder of one DeAndre Washington . . . reported by the accused." (*Id.* at 85). He also argued that the plea agreement was void because he entered it based on Mr. Johnson's threats against his family and his erroneous impression that it was the only way to protect them. (*Id.* at 89–91).

After an independent review of the record, the Eleventh Circuit affirmed Mr. Riggs' convictions and sentences. *United States v. Riggs*, 589 F. App'x 523 (11th Cir. 2015).

## II. DISCUSSION

Mr. Riggs primarily raises three issues in his § 2255 motion: (1) Mr. Riggs' guilty plea was not knowing and voluntary; (2) trial counsel was ineffective because of his conflict of interest; and (3) he is actually innocent.[2] (Doc. 63).

*1. Invalid Guilty Plea*

Mr. Riggs' first claim is that his guilty plea was involuntary. He asserts that after he gave a statement against Mr. Johnson and before he entered the plea agreement, he told Mr. Threatt that Mr. Johnson had threatened Mr. Riggs' wife and children. (Doc. 63 at 4). According to Mr. Riggs, Mr. Threatt told him that the United States Marshals Service would protect Mr. Riggs' family only if he pled guilty. (*Id.*). Mr. Threatt allegedly also told Mr. Riggs that, if

---

[2] Mr. Riggs states at various points throughout his § 2255 motion and in his briefs that counsel's alleged conflict of interest resulted in the *denial* of counsel at each of the conflict-of-interest hearings. (Doc. 63 at 8–9, 14, 17–19; Doc. 75 at 2–5). To the extent that Mr. Riggs attempts to raise a denial-of-counsel claim, the court denies it because the record confirms that Mr. Riggs was represented by counsel at every stage of his criminal proceedings.

Mr. Riggs also alleges that another federal public defender, Sabra Barnett, who was not representing him, shared information about him with one of her clients. (Doc. 63 at 18–19; 75 at 7). But an attorney who was not representing him cannot have provided him with ineffective assistance. To the extent that Mr. Riggs attempts to assert a claim of ineffective assistance about Ms. Barnett's actions, the court denies that claim as well.

8

he pled guilty, he would receive a sentence of time served for substantially assisting the Government. (*Id.* at 14–15).

Of relevance to Mr. Riggs' § 2255 motion, a movant seeking to challenge his sentence faces two procedural hurdles to raising a claim. First is the procedural bar, which provides that "once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quotation marks omitted). The other is the doctrine of procedural default, which precludes any claim that the defendant could have, but did not, raise on direct appeal. *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004).

The procedural bar and procedural default rules—the first prohibiting claims that the movant raised on direct appeal and the second prohibiting claims that the movant did *not* raise on direct appeal—may seem to place the movant in an impossible position. The movant may navigate the narrow passage between those two rules by raising in his § 2255 motion a claim that he *could not have raised* in his direct appeal—for example, a claim of ineffective assistance or a claim based on newly discovered evidence. *See, e.g.*, *Bousley v. United States*, 523 U.S. 614, 621–22 (1998) (noting the "exception to the procedural default rule for claims that could not be presented [on direct appeal] without further factual development"); *Brown v. United States*, 688 F. App'x 644 (11th Cir. 2017) ("One example of a claim typically requiring further factual development through a § 2255 proceeding is a claim based on ineffective assistance of counsel.").

But Mr. Riggs' claim challenging the validity of his guilty plea does not rest on the ineffectiveness of his attorney or on evidence that he discovered *after* his appeal. Instead, Mr. Riggs' claim is simply that his guilty plea was invalid because (1) he entered the guilty plea

9

based on his belief that pleading guilty was the only method to protect his family from Mr. Johnson, who had threatened them; and (2) Mr. Threatt told him that was the only way to get a lower sentence for substantially assisting the Government. (Doc. 63 at 4, 14–15).

The court finds that his claim is procedurally barred in part and procedurally defaulted in part. As to the part of his claim relating to Mr. Johnson's alleged threats against Mr. Riggs' family, the claim is procedurally barred. In his *pro se* brief on appeal to the Eleventh Circuit, Mr. Riggs argued that his guilty plea was invalid because he entered the plea agreement under the erroneous impression that it was the only way to protect his family. (Doc. 13-2 at 90–91). The Eleventh Circuit, in affirming his convictions, rejected that argument. *Riggs*, 589 F. App'x 523.

The Eleventh Circuit has held that a *pro se* brief filed in response to counsel's *Anders* brief triggers the procedural bar because "an issue presented is presented, even if raised only in the *pro se* response to an *Anders* brief." *Stoufflet v. United States*, 757 F.3d 1236, 1242 (11th Cir. 2014) (quotation marks, alteration, and citation omitted). Because Mr. Riggs challenged the validity of his guilty plea based on the alleged threats by Mr. Johnson against his family, and the Eleventh Circuit rejected that challenge, the procedural bar prevents this court from considering that claim on collateral review.

Less clear is whether the portion of Mr. Riggs' claim relying on Mr. Threatt's alleged promise of a sentence reduction is also procedurally barred. Mr. Riggs' *pro se* brief on appeal did not mention any promise of a sentence reduction, even though Mr. Riggs had already raised that alleged promise in the district court as a ground to withdraw his guilty plea. (*See* Cr. Doc. 57 at 1–2; Doc. 13-2 at 90–91). But the court need not decide whether that portion of the claim is procedurally barred because, even if it is not, Mr. Riggs procedurally defaulted it.

Mr. Riggs' motion to withdraw his plea alleged that Mr. Threatt had induced him to plead guilty by telling him that such a plea was the only way to get a reduction in his sentence. (Cr. Doc. 57 at 1–2). He *could have* raised that argument in his *pro se* brief on appeal—he had already raised it in the district court by that point—but his *pro se* brief on appeal challenged his guilty plea only on the basis that he entered the plea to protect his family. (*See* Doc. 13-2 at 90–91). And his § 2255 motion does not allege any newly discovered evidence supporting the claim; it does not bring to light any information that was not already in the record of the trial proceedings. As a result, he procedurally defaulted his challenge to the guilty plea based on Mr. Threatt's alleged promise of a sentence reduction.

Two exceptions to the procedural default rule exist. Under the first exception, "a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Lynn*, 365 F.3d at 1234. Mr. Riggs has not alleged any facts that could support a showing of cause or prejudice. Under the second exception, a court may excuse the movant's procedural default "if a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (quotation marks omitted). Mr. Riggs relies on the second exception by arguing that he is innocent of his crimes of conviction. (Doc. 63 at 5).

To establish actual innocence, a § 2255 movant must demonstrate that, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotation marks omitted). Mr. Riggs makes two arguments in support of his allegation that he is actually innocent. First, he alleges that, unbeknownst to him, his housemate at the time of the crimes was a confidential informant named Joy Brown, using the alias Laney Jones, who was working with police in exchange for a lighter sentence. (Doc. 63 at 22–23). Mr. Riggs contends that she used a SIM card from one of his

broken cellphones to send the texts and explicit photographs to the other undercover agent who was posing as a young girl, all in a scheme to frame him and stop his work as an informant exposing the involvement of public officials in the drug trade. (*Id.* at 4–5, 22). He states that, while he was in jail, Ms. Brown admitted to him that she sent the nude pictures of him from her cellphone. (*Id.* at 22). Second, he alleges that ten alibi witnesses would have proved that he was not "even present when the alleged conduct occurred." (*Id.* at 12, 23).

Mr. Riggs has not established that, "more likely than not . . . , no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623. Law enforcement officers arrested Mr. Riggs on the date and at the time and place that he had arranged to meet with someone he believed was 14 years old, after he had sent numerous explicit text messages and emails, including nude photographs of himself, to that person. (*See* Doc. 55 at 4–5). Furthermore, at the hearing on Mr. Riggs' motion to withdraw his guilty plea, Mr. Threatt testified that Mr. Riggs had made a videotaped confession to the police in which he admitted to sending the emails, text messages, and nude photographs.[3] (Cr. Doc. 114 at 45). Although the Government did not submit that confession during Mr. Riggs' criminal proceedings, it would be entitled to do so now. *See Bousley*, 523 U.S. at 624 ("[T]he Government is not limited to the existing record to rebut any showing [of actual innocence] that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy . . . .").

In contrast to that evidence, Mr. Riggs presents his own allegation that Ms. Brown was an informant who framed him. Because he does not include any affidavit from Ms. Brown or any

---

[3] In his reply brief, Mr. Riggs mentions in passing that Mr. Threatt "presented an edited version of the videotaped interview," but he does not explain that statement any further. (*See* Doc. 75 at 7).

other witness, the court can only assume that he is proffering his own testimony in support of that allegation. Even if Mr. Riggs had taken the stand at trial and testified about the alleged conspiracy to frame him, the court cannot find it more like than not that his testimony would have overcome the strong evidence against him such that "no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623.

As for Mr. Riggs' assertion of an alibi defense, the court notes that an alibi is "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." *Alibi*, Black's Law Dictionary (10th ed. 2014). Mr. Riggs does not set out how his ten alibi witnesses would have proved the "physical impossibility" of him using his phone to send text messages, emails, and photographs to the undercover agent. (*See generally* Doc. 63; Doc. 75 at 6). The court notes that, at the hearing on Mr. Riggs' motion to withdraw his plea, Mr. Threatt testified that he spoke to "at least" eight of the witnesses Mr. Riggs said would provide him with an alibi, but he had declined to file an alibi because "when the criminal allegation is that you were sending text messages from a phone, it does not matter whether you were doing that in this building or across the street." (Cr. Doc. 114 at 55, 74–75). And, as discussed above, police arrested Mr. Riggs at the appointed time of an arranged encounter with a girl he believed to be underage, after exchanging multiple text messages and emails from his phone. Again, the court cannot find that, more likely than not, "no reasonable juror would have convicted" Mr. Riggs if he had presented his alibi defense. *See Bousley*, 523 U.S. at 623.

Mr. Riggs' claim that his guilty plea is invalid because he entered it under duress is procedurally barred in part and procedurally defaulted in part. And Mr. Riggs cannot excuse the

13

procedural default because he cannot establish his actual innocence.  As a result, the court WILL DENY this claim.

*2. Ineffective Assistance Based on Conflict of Interest*

Mr. Riggs' second claim is that Mr. Threatt provided ineffective assistance because he was operating under a conflict of interest by representing both Mr. Johnson—who allegedly confessed to Mr. Riggs that he had committed an unsolved murder—and Mr. Riggs.  (Doc. 63 at 7, 12).  Mr. Riggs contends that, to protect Mr. Johnson, Mr. Threatt had to "silence" Mr. Riggs.  (*Id.*).  This claim fails because, even if Mr. Threatt had a conflict of interest, Mr. Riggs waived the conflict on the record.

In a typical claim of ineffective assistance of counsel, the movant must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness; *and* (2) he suffered prejudice because of that deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 684–91 (1984).  But the standard is different when a movant alleges ineffective assistance based on a conflict of interest.  A movant who can "show[ ] that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."  *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980).  To obtain the presumption of prejudice in this type of case, the movant must "demonstrate[ ] that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance."  *Strickland*, 466 U.S. at 692.  But a defendant can waive the right to conflict-free counsel.  *United States v. Garcia*, 517 F.2d 272, 276–78 (5th Cir. 1975),[4] *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259 (1984).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

14

During Mr. Riggs' criminal proceedings, a magistrate judge found that Mr. Threatt did not have a conflict based on his concurrent representation of Mr. Riggs and Mr. Johnson, and the court found that Mr. Threatt had provided effective assistance despite Mr. Riggs' charge of a conflict. (Cr. Doc. Minute Entry, Sept. 5, 2013; Cr. Doc. 114 at 88–90). Mr. Riggs did not challenge those findings in his direct appeal. (*See* Doc. 13-2 at 55–72).

Nevertheless, because Mr. Riggs' current claim is one of ineffective assistance based on the alleged conflict, the court will not deny the claim as procedurally defaulted. *See Massaro v. United States*, 538 U.S. 500, 509 (2003) ("We . . . hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255."). But the court also will not reevaluate the underlying finding that Mr. Threatt had no conflict, because Mr. Riggs had the opportunity to challenge that finding and failed to do so.

In light of the magistrate judge's and the court's earlier findings that Mr. Threatt had no conflict, Mr. Riggs cannot now establish ineffective assistance based on a conflict of interest. *See Cuyler*, 446 U.S. at 349–50 (requiring the movant to show *both* an *actual* conflict of interest and that the conflict affected the adequacy of his representation).

And even if the magistrate judge had not made a finding that Mr. Threatt had no conflict, or if that finding were somehow wrong, Mr. Riggs would not be able to demonstrate that Mr. Threatt's representation of him violated the Sixth Amendment, because Mr. Riggs waived the right to conflict-free counsel. To establish waiver, the record must demonstrate "that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel." *United States v. Rodriguez*, 982 F.2d 474 (11th Cir. 1993).

The record demonstrates each of those requirements. Mr. Riggs was clearly aware of the alleged conflict of interest, aware that a conflict could affect his defense, and aware of the right to obtain other counsel, because he filed not one, but two *pro se* motions based on the alleged conflict, expressly seeking a new attorney in one of those motions. (*See* Cr. Doc. 51; Cr. Doc. 57 at 6). Yet at the hearing on his first motion about the conflict, he told the magistrate judge that, after he had placed his motion in the mail, he had discussed the alleged conflict with Mr. Threatt and they had "determined this was not going to be an issue." (Cr. Doc. 109 at 7). Finally, the court notes that, at his change of plea hearing, which took place *after* the conflict hearing, Mr. Riggs responded "yes" when the court asked if he was satisfied with Mr. Threatt's representation of him. (Cr. Doc. 62 at 24).

The court finds that, even *assuming* that Mr. Threatt had an actual conflict of interest—an assumption that the court doubts—Mr. Riggs validly waived that conflict. And to the extent that Mr. Riggs asserts that his other attorneys had conflicts of interest, he has not explained what the conflict of interest was or how it adversely affected their representation of him. *See Cuyler*, 446 U.S. 335, 349–50 (requiring both an actual conflict of interest and that the conflict affected the adequacy of counsel's representation). As a result, he cannot establish that he received ineffective assistance of counsel. *See McCorkle v. United States*, 325 F. App'x 804, 807–08 (11th Cir. 2009) (concluding that the movant did not receive ineffective assistance of counsel because he waived his trial attorney's conflict of interest). As a result, the court WILL DENY this claim.

    *3. Actual Innocence*

Mr. Riggs contends that a confidential informant, Joy Brown, sent the explicit text and email messages that formed the basis for his convictions. (Doc. 63 at 5). As the court discussed

above, Mr. Riggs cannot establish that he is actually innocent. But even if he could, a freestanding claim of actual innocence is not cognizable in a § 2255 motion. *Jordan v. Sec'y Dep't of Corr.*, 485 F.3d 1351, 1356 (11th Cir. 2007) ("[O]ur precedent forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases."); *see also Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation . . . ."). As a result, the court WILL DENY this claim.

*4. Certificate of Appealability*

Rule 11 of the Rules Governing § 2255 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Cases. The court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 338 (2003) (quotation marks omitted). This court finds that Mr. Riggs' claims do not satisfy either standard. The court WILL DENY a certificate of appealability.

### III. CONCLUSION

The court WILL DENY Mr. Riggs' § 2255 motion. The court WILL DENY AS MOOT Mr. Riggs' motion for appointment of counsel. The court WILL DENY Mr. Riggs a certificate of appealability.

The court will enter a separate order consistent with this opinion.

17

**DONE** and **ORDERED** this 2nd day of May, 2018.

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE